**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| U.S. SECURITIES & EXCHANGE COMMISSION,<br><br>　　　　　　*Plaintiff-Appellee*,<br><br>v.<br><br>E. ANDREW SCHOOLER,<br>　　　　　　*Defendant-Appellant*,<br><br>and<br><br>FIRST FINANCIAL PLANNING CORPORATION, DBA Western Financial Planning Corporation,<br>　　　　　　*Defendant.* | No. 16-55167<br><br>D.C. No. 3:12-cv-02164-GPC-JMA<br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Submitted July 13, 2018[*]
Pasadena, California

Filed September 26, 2018

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Sandra S. Ikuta and N. Randy Smith, Circuit
Judges, and Stephen M. McNamee,[**] District Judge.

Opinion by Judge  N.R. Smith

**SUMMARY**[***]

**Securities Law**

The panel affirmed in part, and vacated in part, the district
court's judgment in favor of the U.S Securities & Exchange
Commission ("SEC") in a civil enforcement action alleging
federal securities law violations brought against Louis
Schooler and his company Western Financial Planning
Corporation.

The panel affirmed the district court's core holding that
the general partnership interests at issue were investment
contracts and qualified as securities under federal law, and
that Louis Schooler violated federal securities law by selling
unregistered securities and defrauding his investors.

Louis Schooler died during the pendency of the appeal,
and E. Andrew Schooler (as executor of the estate) replaced
him as the named party on appeal.  The panel vacated the
civil penalty ordered by the district court in light of Louis

---

[**] The Honorable Stephen M. McNamee, Senior United States District
Judge for the District of Arizona, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

Schooler's death.  The panel also vacated and remanded the disgorgement order for reconsideration in light of the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), which altered the analysis for determining the limitations period applicable to disgorgement.

The panel affirmed the district court's judgment in all other aspects.   The panel affirmed entry of summary judgment for the SEC on its claims under Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities and Exchange Act of 1934, and Rule 10b-5 thereunder.

## COUNSEL

Bryan C. Vess, Bryan C. Vess APC, San Diego, California; Philip H. Dyson, Law Office of Philip H. Dyson, Las Mesa, California, for Defendants-Appellants.

Stephen G. Yoder, Senior Litigation Counsel; John W. Avery, Deputy Solicitor; Robert B. Stebbins, General Counsel; Securities and Exchange Commission, Washington, D.C.; for Plaintiff-Appellee.

## OPINION

N.R. SMITH, Circuit Judge:

Dressing an investment contract in the trappings of a general partnership interest does not immunize that interest from the federal securities laws. Our standard for identifying an "investment contract" under federal securities law has long been "flexible rather than . . . static"; it "is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). The undisputed facts establish that the general partnership interests at issue were stripped of the hallmarks of a general partnership and marketed as passive investments. Accordingly, we affirm the district court's core holding that the general partnership interests at issue qualify as securities under federal law and that Louis Schooler violated federal securities law by selling unregistered securities and defrauding his investors.

Louis Schooler died during the pendency of the appeal, but E. Andrew Schooler (as executor of his estate) replaced him as the named party on appeal. In light of Louis Schooler's death and intervening Supreme Court precedent, the Securities and Exchange Commission (SEC) acknowledges that several components of the district court's judgment require vacatur or remand. Specifically, we vacate the civil penalty ordered by the district court in light of Louis Schooler's death.[1] We also vacate and remand the

---

[1] To determine whether a monetary penalty abates upon a defendant's death we ordinarily examine whether the penalty is penal or civil in nature. *United States v. $84,740.00 Currency*, 981 F.2d 1110, 1113 (9th

disgorgement order for reconsideration in light of the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), which alters the analysis for determining the limitations period applicable to disgorgement. As noted above, we affirm the district court's judgment in all other respects.

I.

Between 1978 and 2012 (when the SEC filed suit), Louis Schooler individually and through his wholly owned company, First Financial Planning Corporation d/b/a Western Financial Planning Corporation (Western),[2] engaged in the business of identifying tracts of land to purchase and sell to investors by means of general partnership interests. Through these alleged general partnership interests, each investor/partner would own a fractional interest in the parcels to hold as a speculative investment—in the hopes that the areas where the land was located would become developed and the value of the land would increase. Specifically, Schooler would identify a tract of land, purchase it in the name of his company, and then turn around and mark up the price (often by several multiples of the price originally paid)

---

Cir. 1992). If it is a 'civil' penalty we examine whether the penalty "is [nonetheless] so punitive either in purpose or effect as to negate that intention." *Id.* Here the SEC affirmatively concedes that the $1.05 million penalty "serve[s] no remedial purpose" and "should be vacated." Given the lack of adversary briefing on this issue, we accept the SEC's stipulation for purposes of this case and vacate the civil penalty, without deciding the ultimate merits of the issue.

[2] For convenience, we generally refer to the two principal defendants before the district court (Louis Schooler and his company, Western) collectively as "Schooler."

to sell the land to investors. Schooler sold interests in a general partnership to the investors that would collectively hold the land (typically with several other general partnerships). Schooler marketed these general partnership interests to individuals across the United States and ultimately sold 3,400 such interests over the lifetime of the operation.

In 2012, the SEC brought suit asserting a host of federal securities law violations. The SEC sought a temporary restraining order (TRO) and the appointment of a receiver. The district court granted a TRO and eventually converted the order to a preliminary injunction. The parties litigated the case through summary judgment, where the district court granted the SEC's summary judgment motions and denied Schooler's. This appeal followed.

## II.

"We review the district court's grant of summary judgment de novo." *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). In conducting this review, we take all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party and determine whether disputed issues of material fact preclude summary judgment. *See id.*

## III.

Here, we deal with federal securities laws regulating investment contracts. 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10). The term "investment contract" has long "been broadly construed . . . so as to afford the investing public a full measure of protection." *See SEC v. W.J. Howey Co.*,

328 U.S. 293, 298 (1946). Accordingly, "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." *Id.* at 298–99.

The "touchstone" of this standard "is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852 (1975). The standard is "flexible rather than . . . static" and "is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey*, 328 U.S. at 299. Accordingly, the Supreme Court's use of the phrase "solely from the efforts of the promoter or a third party" has not been literally applied to innoculate any scheme that nominally purports to afford investors power or responsibility to advance the common enterprise. *E.g.*, *Forman*, 421 U.S. at 853 n.18 (noting that the "leasehold rights" sold were "purely an incidental consideration in the transaction" where "exploratory drillings gave investments 'most of their value and all of their Lure'" (quoting *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 348–49 (1943))); *SEC v. Rubera*, 350 F.3d 1084, 1091–92 (9th Cir. 2003) ("We have rejected a strict interpretation of this prong in favor of a more flexible focus on 'whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'"

(quoting *SEC v. Glenn W. Turner Enters.*, 474 F.2d 476, 482 (9th Cir. 1973))).

We must here determine whether the general partnership interests Schooler sold qualify as investment contracts governed by federal securities law. A traditional general partnership implies a joint endeavor in which all partners share in the control and management of the enterprise and advancement of the collective profit effort. *See Williamson v. Tucker*, 645 F.2d 404, 423–24 (5th Cir. 1981); *see also Hocking v. Dubois*, 885 F.2d 1449, 1460–61 (9th Cir. 1989) (en banc) (reaffirming that *Williamson* has been adopted in the Ninth Circuit). Where such an arrangement was anticipated at the outset, *e.g.*, *Williamson*, 645 F.2d at 424 n.14 (noting the timing requirement that "reliance on the manager" must be shown to be "an understanding in the original transaction, and not some subsequent decision to delegate partnership duties"), and is not illusory in practice, *id.* at 422–24, investment in a general partnership is not a security. *See id.* at 422–26.

We have adopted the three factors articulated in *Williamson v. Tucker* (any one of which is sufficient) to establish that a general partnership should be treated as a security when:

> (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or

> venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Hocking*, 885 F.2d at 1460 (quoting *Williamson*, 645 F.2d at 424). These factors are not exhaustive. *Id.* ("Of course, under different facts or legal arrangements other factors might give rise to such a dependence on the promoter or manager that exercise of control would be effectively precluded.").

## IV.

Applying these principles, the district court correctly determined that the general partnership interests in this case were investment contracts governed by federal securities law. The district court primarily rested its decision on the fact that investors placed their money with Schooler significantly before their general partner interests (and associated powers) became effective. The district court characterized this circumstance as complying with the first *Williamson* factor, but it also noted that, whether this fact fit squarely within the first factor, it nonetheless found it to be an important other factor establishing dependence on Schooler. The district court also analyzed the second and third *Williamson* factors but ultimately concluded that, although the SEC had submitted significant undisputed facts to support these factors, the record was not sufficient to establish these factors as a matter of law.

The district court treated each of the *Williamson* factors as an issue for summary judgment. However, the *Williamson* factors are not in fact distinct 'claims' or 'issues' that need be decided individually for summary judgment purposes. These factors are simply heuristics useful in answering the ultimate question of whether a general partnership interest should be considered an investment contract for purposes of federal securities laws.

Even giving Schooler the benefit of all reasonable inferences, the collective force of the following undisputed facts identified by the district court establish as a matter of law that the general partnership interests in this case were securities under federal law. First, the facts establish beyond dispute that Louis Schooler, personally and through Western, exercised near total control over the investments between receipt of investor payments and execution of the partnership agreements. Unlike a traditional general partnership, the partnership agreements in this case were not effective upon delivery of investor funds. Rather, the agreement stated that it became effective upon the date identified (and intentionally left blank) on the first page of the partnership agreement. Because the agreements were not yet effective, investors had no power to control their investments during this period. Yet, it was during this precise time that nearly all meaningful decisions were made that would determine the success or failure of the investment. Schooler controlled how many interests to market and sell in each partnership, diluting the power of partners by selling a large number of interests in each general partnership. Schooler determined the properties to purchase and the price the partnerships would pay. He determined how many different general partnerships to include as co-tenants of a single property. Likewise, Schooler determined when to close the final partnership and establish

the co-tenancy arrangements. During this critical period, 93% of the investors' money was expended—without any opportunity for investor input or control.

By the time Schooler executed the partnerships by filling in the effective date, there was little that could be done to determine the success or failure of the investment. At the time of execution, general partners were transferred fractional interests in land and could do little more than hope that the land would appreciate in value substantially more than the ongoing maintenance expenses Schooler charged. An investment in land for long-term holding is inherently speculative, as expressly noted in the partner representations. Nonetheless, decisions about what property to purchase and how much to pay for it are among the most important decisions in determining the success of the investment. In this scheme, general partners had no real control over these decisions.

Further, once the partnership agreements were executed and co-tenancies established, Louis Schooler acknowledges that it was "potentially unworkable" for partners to exercise their powers to jointly manage the parcels. Louis Schooler and his associates at Western meanwhile exercised all practical authority in the operation of the partnership, having defaulted authority to themselves and hand-picked signatory partners. From the viewpoint of investors, this passive arrangement was what many expected—having been lured in by the promise of Schooler's expertise in finding parcels and directing when they should be sold. Under these circumstances the SEC made a clear showing that investors "were prevented from exercising their powers" as general partners. *Cf. Matek v. Murat*, 862 F.2d 720, 731–32 (9th Cir. 1988) (finding a general partnership not a security where no

practical impairment to exercising partnership authority had been shown), *abrogated on other grounds by Koch v. Hankins*, 928 F.2d 1471 (9th Cir. 1991).

Andrew Schooler cites a series of cases for the proposition that the first *Williamson* factor is limited to taking the partnership documents at face value. But there is an obvious flaw in this argument—the effective date was on the very first page of the partnership agreement and it unambiguously articulated that the agreement (including all of the shared authority and control) did not become effective until the date indicated (and originally left blank). Nothing in the California code overrides the parties' express agreement that the partnership not begin until the date identified on the face of the agreement. *See* Cal. Corp. Code §§ 16101(9), 16202(a) (defining a partnership as an "association of two or more persons to carry on as coowners a business for profit"). Even if a partnership arose in the interim, there was no mechanism in place for partners to exercise any control over the arrangement during this critical time period. Accordingly, the district court did not err in awarding summary judgment to the SEC and concluding that the general partnership interests were securities.

V.

We likewise affirm the district court's determination that Schooler sold unregistered securities in violation of federal law. Schooler essentially conceded to the district court that his sales of general partnership interests failed to meet the securities registration requirements of Section 5. *See* 15 U.S.C. §§ 77e(a), 77e(c); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (holding that courts will not "manufacture arguments for an appellant, and a bare assertion does not

preserve a claim"). Schooler's only defense rested on a claimed exemption to the registration requirements under Rule 506(b) of the Securities Act, see 17 C.F.R. § 230.506.[3] However, the district court rejected this affirmative defense, because (among other reasons) the court concluded that all of the sales of general partnership interests were an integrated offering and exceeded the 35 investor limit for the exemption. 17 C.F.R. § 230.506(b)(2)(i). In reaching its decisions the district court analyzed the five factors outlined in 17 C.F.R. § 230.502(a):

> (a) Whether the sales are part of a single plan of financing;
>
> (b) Whether the sales involve issuance of the same class of securities;
>
> (c) Whether the sales have been made at or about the same time;
>
> (d) Whether the same type of consideration is being received; and
>
> (e) Whether the sales are made for the same general purpose.

---

[3] Under Rule 506(b), securities are exempt from registration if they are private offerings. 15 U.S.C. § 77d(2). A security qualifies as a private offering if there are fewer than 35 non-accredited investors of securities in the offering, and each non-accredited investor has "such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment." 17 C.F.R. § 230.506(b)(2).

The district court concluded that this case was analogous to *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980), where the court found that "[t]he separation in time from one system offering to the next suggest[ed] that the offerings were not integrated, but that [this] factor [was] heavily outweighed by the remaining considerations." *Id.* at 646.

On appeal, Schooler fails to engage with the district court's analysis and to explain why the four remaining factors do not outweigh the timing factor. Instead, he again articulates that the offerings occurred over a long period of time and makes additional arguments unrelated to any of the factors. Accordingly, he has waived argument on this issue. *Greenwood*, 28 F.3d at 977. The district court correctly determined that all but the timing factor weighed in favor of finding an integrated offering. All of the offerings were used to finance Western's acquisition of land for the partnerships, each involved the issuance of general partner interests in exchange for cash, and all were for the purpose of holding real estate in hope of subsequent appreciation. *Murphy* supports the district court's conclusion that all sales were part of an integrated offering even though the offerings were not made at the same time, 626 F.2d at 646, and Schooler identifies no authority to the contrary.

Moreover, Schooler presents no due process violation. Schooler argues that his due process rights were violated by the district court's decision to amend its order after the SEC filed an amended summary judgment motion. This argument fails because the parties had full opportunity to brief and argue the only issue on which the district court amended its opinion—who bears the burden of producing sufficient facts to establish a genuine issue for trial on exemptions. Schooler can establish no prejudice, because he does not argue that the

district court's resolution of this legal issue was erroneous. Without prejudice, Schooler has not established a due process violation. *SEC v. Am. Capital Invs., Inc.*, 98 F.3d 1133, 1147 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

Additionally, Schooler argues that his reliance on advise of counsel excuses his failure to comply with registration and disclosure requirements, but this too fails. By not raising it before the district court, Schooler waived this issue for appeal. *Campbell v. Burt*, 141 F.3d 927, 931 (9th Cir.1998) (deeming issues not raised before the district court to be waived). Moreover, Schooler's briefing fails to identify any basis for excusing the waiver. We will not make arguments for him. *Greenwood*, 28 F.3d at 977. On the merits, the defense likewise fails because "Section 5 is a strict liability statute" so "good faith reliance on counsel" cannot "preclude liability under the statute." *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1256 n.6 (9th Cir. 2013).

## VI.

Lastly, we affirm the entry of summary judgment in favor of the SEC on its claims under Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder. To establish this violation, the SEC must demonstrate that Schooler made a materially misleading misrepresentation or omission in connection with the offer or sale of a security in interstate commerce and with the requisite scienter. *SEC v. Phan*, 500 F.3d 895, 907–08 (9th Cir. 2007). The district court correctly concluded that the SEC established these elements based on the undisputed evidence that Schooler represented to investors that the value of the "Stead property" was $2.50 per square foot. Instead,

Western had recently purchased the property for $0.40 per square foot and the property was appraised at just under $1.00 per square foot (when the value of water rights was taken into account). This misrepresentation was "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (citation omitted).

Schooler's only defense is good faith reliance on the advice of counsel. Yet, the district court concluded that Schooler had failed to meet his burden in establishing his defense with respect to the Stead property. Specifically, the court found no evidence to establish that Schooler "made a complete disclosure to counsel" by informing counsel that their advertising included representations as to the fair market value of particular parcels. *SEC v. Goldfield Deep Mines Co. of Nev.*, 758 F.2d 459, 467 (9th Cir. 1985) (identifying complete disclosure as an element of the affirmative defense of reliance on counsel). On appeal, Schooler cites no record evidence to rebut the district court's finding. Schooler's cited pages make the conclusory assertion that disclosure was complete, but they do not identify any evidence to support the conclusory allegation. Accordingly, we affirm entry of summary judgment for the SEC on the securities fraud claim.

## VII.

In sum, we **AFFIRM** the district court's judgment against Louis Schooler with only two exceptions acknowledged by the SEC. Specifically, we **VACATE** the civil penalty on account of Louis Schooler's death, and we **VACATE** the disgorgement award and **REMAND** for reconsideration of the appropriate disgorgement in light of *Kokesh v. SEC*, 137 S. Ct. 1635 (2017). In all other respects, the district

court's judgment is **AFFIRMED**. The parties shall bear their own costs on appeal.